**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY L. BAYS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:15-cv-00199-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |

Plaintiff, Shirley Bays, seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs,[1] which were submitted without oral argument to the Magistrate Judge. Following a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

---

[1] The Commissioner filed her opposition brief on December 14, 2015. Doc. 17. Nearly two months later, on February 5, 2016, she filed an amended opposition brief for the sole purpose of removing a single case citation. Doc. 19. Thereafter, Plaintiff filed an amended reply. Doc. 22. As the parties do not dispute the February 5, 2016 filing, which the Commissioner completed without the Court's permission and without supporting legal authority, the Court will proceed to review the amended opposition brief and the revised reply brief.

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[2]

A. *Procedural History*

Plaintiff applied for DIB and SSI on June 2, 2011, alleging a disability onset date of February 28, 2010.[3] The Commissioner denied her claims on November 17, 2011, and upon reconsideration on June 4, 2012. AR 66-67, 71-72, 132, 139. Plaintiff appeared with counsel at a hearing on February 26, 2013. AR 48. Plaintiff was forty-seven years old at the time she applied for benefits, but had turned fifty by the time she appeared at the hearing.

On April 19, 2013, the ALJ issued a written decision finding Plaintiff was not disabled under the Act. AR 27. On December 6, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision and from which Plaintiff filed her timely complaint. AR 1, Doc. 1.

B. *Factual Background*

1. Written Testimony

As stated in Plaintiff's first Disability Report, completed in June 2011, her alleged inability to work stemmed from triple bypass surgery, blockage of the right kidney, legs, and groin area. AR 179. She last worked as a sales associate at Orchard Supply Hardware Store in May 2011, and before that at Target, J.C. Penney, and the United States Postal Service. She also delivered newspapers at one point. AR 180, 194. In September 2011, Plaintiff started feeling constant pain and discomfort, which caused her to feel tired and stressed. AR 212. She could no longer walk for more than thirty minutes, vacuum, mop the floor, climb stairs comfortably, and drive. AR 216-217. In her last Disability Report, completed in July 2012, Plaintiff reported trouble sleeping at night due to the pain in her legs and groin area. AR 228.

In a letter to the Office of Disability Adjudication and Review, dated October 1, 2012,

---

[2] The relevant facts herein are taken from the Administrative Record ("AR").
[3] While Plaintiff's DIB application states a disability onset date of February 28, 2010, her SSI application states a disability onset date of March 1, 2010.

Plaintiff stated she could not visit her heart physician or obtain her medications as she no longer has health insurance and her state disability insurance ended in May 2012. AR 234.

### 2. Medical Evidence

In April 2010, Lit K. Fung, M.D., of Modesto Heart Surgery performed coronary artery bypass surgery on Plaintiff. AR 335. At a follow up visit with Dr. Fung in June 2011, Plaintiff complained of pain in her thighs and legs, especially the right, when she walks. Dr. Fung opined that Plaintiff's "pain appeared to be neural in origin and [there] does not appear to be significant vascular disease on examination to explain her symptoms." She appeared to be "doing quite well following her heart surgery." AR 325. The following month, Plaintiff saw Jeffrey Bradshaw, P.A., and reported soreness in the anterior chest wall, albeit improving. She had stopped smoking, was active, and no longer taking pain medications. AR 321.

In May 2011, Dr. Fung examined Plaintiff and assessed the following: peripheral vascular disease with lower extremity claudication, right renal artery stenosis, and coronary artery disease status post coronary artery bypass surgery. He "explained to her [that] not all her symptoms can be explained by her aortoiliac disease alone. There is a certain degree of neuropathy and, hence, even with a successful aortofemoral bypass, there is a possibility that her symptoms may persist." He recommended she undergo a right renal artery stenting before an aortofemoral bypass. Plaintiff agreed. AR 700-701.

In July 2011, Plaintiff underwent stenting of the right renal artery performed by Peter Lai, M.D. AR 985. The next month, she underwent an aortic endarterectomy and patch angioplasty performed by Dr. Fung. AR 991. After the procedures, Plaintiff reported having difficulty with her pain management as she could barely stand, could not move very far, and most movement caused pain. AR 1181.

In October 2011, Satish Sharma, M.D., completed an internal medicine consultation with Plaintiff at the request of the Department of Social Services ("DSS"). Plaintiff complained of

cramping pain in the lower extremities when she walks half a block. Plaintiff reported experiencing her first heart attack at the age of thirty-one. She continued to have recurrent episodes of chest pains spontaneously and on exertion. They occurred three to four times a month and lasted about ten to fifteen minutes each. She reported a history of borderline diabetes, hypertension, and high cholesterol. She was a smoker for twenty years. Her father died of a heart attack at the age of forty-eight and her brother had multiple strokes in his fifties. Dr. Sharma opined that functionally, Plaintiff could: lift ten pounds frequently and twenty pounds occasionally; stand and walk for six hours a day with normal breaks; and sit without limitations. AR 711-716. In the same month, Plaintiff reported to Mr. Bradshaw she could walk up to half a mile, but not without cramping in the legs and frequent stops. She also reported numbness and pain while driving and sitting down, and experienced daily episodes of spacing out where things get fuzzy and the right eye gets blurry. AR 1178.

Also in October 2011, Plaintiff saw Dr. Fung and reported continuing pain in the legs. He explained to Plaintiff the "symptoms might be related to neuropathy," but to be sure they are not arterial in origin, a computed tomography angiography would be obtained. He noted "she also has a right external iliac stenosis which was not addressed. However, on examination she has an excellent right femoral pulse by palpation suggesting that her external iliac stenosis might not be hemodynamically significant." AR 1176. Dr. Fung examined Plaintiff again in January 2012, wherein in he learned Plaintiff "ha[d] not seen a neurologist" even though a "neurology consult was recommended[.]" He again explained to Plaintiff that "some of her leg pain is most likely a musculoskeletal or . . . nerve problem." AR 791.

In March 2012, Plaintiff underwent right iliac and femoral artery intervention by Stephen Liu, M.D. AR 799. Days later, Dr. Fung completed a Medical Source Statement ("MSS") documenting Plaintiff's physical ability to perform work related activities. In this fill-in-the-blank and check-the-box form, Dr. Fung indicated Plaintiff could: lift and/or carry twenty pounds

4

occasionally and ten pounds frequently; stand and/or walk for at least two hours in an eight-hour workday due to severe hip pain bilaterally; sit for six hours out of an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; reach, handle, finger, and feel with no limitations; and had no environmental restrictions with regard to heights, extreme temperatures, chemicals, and dust. Dr. Fung noted Plaintiff "has been able to walk despite pain." AR 1007-1008.

In May 2012, during a visit with Mr. Bradshaw, Plaintiff reported continued bilateral lower extremity cramping. She could barely walk fifty feet and would limp the entire distance. She found no improvements with an increase in pain medication. Objectively, Mr. Bradshaw observed Plaintiff's extremities revealed "excellent" distal signals and "no neuromotor deficit" of the feet. He noted the cause of Plaintiff's pain was unclear. AR 1163.

In January 2013, Dr. Fung completed a Cardiac MSS, another fill-in-the-blank and check-the-box form. He diagnosed Plaintiff with peripheral occlusive vascular disease. Her symptoms included weakness and chronic lower extremity pain. She was capable of tolerating moderate work stress. Functionally, she could: walk for two city blocks without rest or severe pain; sit, stand, and walk for about four hours in an eight-hour workday; would require unscheduled breaks every two hours; lift and carry twenty pounds frequently but never fifty pounds; frequently twist, stoop, crouch, climb stairs and ladders; and must avoid even moderate exposure to cigarette smoke but otherwise has no environmental restrictions. Plaintiff would likely be off task twenty-five percent or more in a typical workday. Her impairments would produce good days and bad days, with absences of more than four days per month. He noted Plaintiff suffered bilateral lower extremity pain and numbness which did not resolve with surgery. AR 1256-1259.

In February 2013, Marek Skowron, M.D., Plaintiff's primary physician, completed a questionnaire concerning her physical ability to perform work-related activities. Dr. Skowron opined Plaintiff: could lift and carry less than ten pounds frequently; could occasionally twist; never stoop, crouch, and climb stairs and ladders; could handle, finger and feel; could not reach, push, and

5

pull; could sit, stand, and walk for less than two hours in an eight-hour workday for five minutes at a time; needed to shift from sitting, standing or walking; needed to lie down every thirty minutes in an eight-hour workday; must avoid exposure to extreme cold and heat, soldering fluxes, solvents/cleaners, and chemicals; and must avoid even moderate exposure to high humidity, fumes, odors, dusts, and gases. AR 1260-1263.

Like Dr. Fung, Dr. Skowron also completed a Cardiac MSS. Therein, he diagnosed Plaintiff with peripheral vascular disease and coronary arteriosclerosis, such that she was "unable to work." Dr. Skowron opined Plaintiff was incapable of even low stress work. Functionally, she could walk for only one city block; sit, stand, and walk for less than two hours; would require unscheduled breaks every thirty minutes; needed to elevate her feet with prolonged sitting (more than half of an eight-hour workday); lift and carry less than ten pounds occasionally, ten pounds rarely, and never twenty pounds; rarely twist; never stoop, crouch, climb stairs and ladders; must avoid all exposure to extreme cold, heat soldering fluxes, solvents/cleaners, and chemicals; must avoid even moderate exposure to high humidity, wetness, and fumes, odors, and gases; but had no restriction with exposure to dust. Plaintiff would likely be off task twenty-five percent or more in a typical workday. Her impairments would produce good days and bad days, with absences of more than four days per month. AR 1264-1267.

Finally, a number of medical consultants reviewed Plaintiff's file in making the initial disability determination and on reconsideration. They included: A. Nasrabadi, M.D.; Christopher Maloney, M.D.; and A. Garcia, M.D. In November 2011, Dr. Nasrabadi completed a Physical RFC Assessment form indicating Plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand and/or walk for about six hours in an eight-hour workday; push and /or pull without limit; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, and scaffolds. She had no manipulative, visual, and environmental limitations. He opined that a light RFC was appropriate. AR 754-761.

6

In May 2012, Dr. Maloney completed a Physical RFC Assessment form indicating Plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for four hours in an eight-hour workday; sit for about six hours in an eight-hour workday; push and /or pull without limit; frequently climb ramps and stairs, ladders, ropes and scaffolds, balance, stoop, kneel, and crouch; and occasionally crawl.  Plaintiff was to avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights.  Dr. Maloney noted his opinions significantly differed with other "medical source conclusions" and stated the "MSS is old and [claimant] has not improved since the [consultative examination]."  He did not identify the MSS.  AR 1017-1024.  The next month, Dr. Garcia reviewed Plaintiff's file and stated: "[third party] provided [sedentary] RFC.  [Sedentary] RFC seems to be appropriate."  She further stated that disability "[w]ould be grant[ed] at age 50 with [sedentary] RFC," which "[claimant] attains . . . 3 months from now.  [Claimant] alleges [alleged onset date] 2/28/10 at which 48 [years old], would be a denial using younger age rule."  AR 1038-1040.

3. <u>Hearing before ALJ</u>

Plaintiff testified she experienced constant leg pains with cramping in the calves, tingling in the feet and burning in the big toes.  She could not sleep at night.  She could stand for about fifteen to twenty minutes, walk for about fifty to 100 feet, and sit for about five to ten minutes at a time.  She could not lift her grandchildren, who weighed about thirty pounds, and could not drive.  An average day consisted of waking up, drinking coffee, doing laundry if she can, and vacuuming or moping depending on how her legs feel and with the help of her husband and daughter.  When triggered, Plaintiff's chest pain required her to lie down for as much as half a day.  AR 52-57.

Plaintiff testified that according to Dr. Fung, the pain in her legs would likely persist for life as the arteries therein are too small, thereby causing a problem with the blood flow.  She may lose a toe or a foot.  She was, at the time, not receiving any medical treatment or taking any medications because she had no insurance.  AR 58-59.

The VE, Lorian Hyatt, classified Plaintiff's past work to include retail sales and mail delivery. AR 60. Among the hypotheticals posed, the ALJ asked the VE to consider a person who could/must:

- perform light work;
- stand and/or walk for four hours out of an eight-hour workday;
- frequently climb ramps and stairs;
- occasionally climb ladders, ropes, or scaffolds;
- frequently balance, stoop, kneel, and crouch;
- occasionally crawl;
- avoid concentrated exposure to extreme cold and heat;
- avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; and
- avoid concentrated exposure to hazards defined as operational control of dangerous moving machinery and unprotected heights.

When asked if there was work which such person could perform, the VE listed the jobs of assembler (DOT 706.684-022) and electronics worker (DOT 726.687-010). The VE further stated there were transferable skills from Plaintiff's retail sales job to a sedentary job of telephone solicitor. These skills included the ability to listen to customer request; identify, interpret, prepare and present information; manage time; problem solve; speak clearly; being sensitive to diverse cultures; and attaining self-confidence. AR 61-63.

4. <u>ALJ's Decision</u>

A claimant is disabled under Title XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[4]

---

[4] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past

8

In his written decision, the ALJ here found that at step one, Plaintiff had not engaged in substantial gainful activity since February 28, 2010, the alleged onset date.  At step two, Plaintiff had the following severe impairments: (1) peripheral vascular disease; (2) history of coronary artery disease, status post graft surgery; and (3) leg pain/cramping of unclear etiology.  At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff had the residual functional capacity (RFC) to perform light work as follows:

- lift and/or carry twenty pounds occasionally and ten pounds frequently;
- stand and/or walk for four hours out of an eight-hour workday with regular breaks;
- sit for six hours out of an eight-hour workday with regular breaks;
- no limits with respect to pushing and/or pulling;
- frequently climb ramps and stairs;
- occasionally climb ladders, ropes, or scaffolds;
- frequently balance, stoop, kneel, and crouch;
- occasionally crawl;
- avoid concentrated exposure to extreme cold and heat; and
- avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas;
- avoid concentrated exposure to hazards defined as operational control of dangerous moving machinery and unprotected heights.

At step four, Plaintiff could not perform any past relevant work; however, she acquired: "the ability to listen to customer requests, clear speaking skills, the ability to identify an interpret information, managing time, problem solving, presenting information, self-confidence, and sensitivity to diverse cultures."

Finally, at step five, the ALJ noted: (1) Plaintiff was forty-seven years old on the alleged disability onset date, though she later "changed age category to closely approaching advanced age;" (2) had a limited education and could communicate in English; and (3) had acquired skills from her past relevant work "in retail sales as a telephone solicitor[.]"  AR 25.  Recounting the VE's opinion that Plaintiff could perform the jobs of assembler and electronics worker, the ALJ concluded a

---

relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

finding of not disabled was appropriate under Rules 201.20 and 201.11 of the Medical-Vocational Guidelines.  Consequently, the ALJ concluded Plaintiff was not disabled as defined under the Act from February 28, 2010 through the date of the decision.  AR 20-27.

II. DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld."  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination."  *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

B. *Analysis*

1. <u>Dr. Fung</u>

Plaintiff contends the ALJ failed to give clear and convincing reasons for rejecting the opinions of Dr. Fung. The Commissioner avers the ALJ was not required to provide clear and convincing reasons, but nonetheless did so, and his reasons were substantially supported by the evidence.

Generally, "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citation omitted). "[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons." *Id.* And "if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* (internal quotations and citation omitted).

Dr. Fung's status as a treating physician is undisputed. And because his opinions contradicted those of Drs. Sharma and Nasrabadi, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting them. As the ALJ explained:

> In determining the claimant's physical [RFC], the undersigned has given significant weight, but not full weight, to . . . Dr. Sharma, and the State agency physical medical consultants on initial review and on reconsideration, and to Dr. Fung, the claimant's treating physician's medical source statement of March 27, 2012 . . . .
>
> On January 29, 2013, Dr. Fung, generated a cardiac [MSS] wherein he opined the claimant would have functional limitations that would preclude her from performing all work on an ongoing basis[.] The undersigned rejects Dr. Fung's opinions, as they were far more restrictive than [the March 27, 2012 MSS], but were not supported by any objective findings. Simply stated, there was no deterioration in the claimant's symptoms that coincided with the more restrictive functional imitations he assessed. For instance, he opined bilateral lower extremity pain would keep the claimant off task for at least 25 percentage of a typical workday, even though physical examinations of the claimant's legs were generally unremarkable. This indicates these new functional limitations overly relied on the claimant's subjective complaints rather than objective clinical and diagnostic findings.

11

AR 24. The ALJ therefore did not reject all of Dr. Fung's opinions, only those in the January 2013 Cardiac MSS which were more restrictive than the March 2012 MSS and which suggested that Plaintiff could not work on a consistent basis. Essentially, they included the assessment that Plaintiff would be off task for twenty-five percent or more in a typical workday and be absent for more than four days per month. And the ALJ's reason was specific: objective medical findings did not support these "more restrictive" assessments. The question then is whether the reason was legitimate.

As an initial matter, Plaintiff correctly notes the two MSSs are different. Unlike the January 2013 Cardiac MSS, the March 2012 MSS did not include questions about the likelihood of Plaintiff being off-task and absent from work. But Plaintiff does not explain how this difference undermined the ALJ's reason. Indeed, Plaintiff underwent coronary artery bypass surgery and other procedures to address problems with arterial blockage of the lower extremities. But as the ALJ correctly outlined, Plaintiff's physical examinations thereafter, including those performed by Dr. Fung, were generally unremarkable.

Plaintiff points to her numerous reports of continuing pain. But subjective complaints of pain do not equate objective medical findings. Plaintiff also points to Dr. Skowron's February 2013 questionnaire and MSS as evidence consistent with Dr. Fung's January 2013 opinions. But the ALJ also rejected Dr. Skowron's opinions, finding they "appear to have been completed as an accommodation to the claimant and include only conclusions . . . without any rationale for those conclusions," and the limitations assessed "contrast sharply with the other evidence of record, which renders [them] less persuasive." And Plaintiff does not take issue with the ALJ's findings on Dr. Skowron's opinions.

Additionally, Plaintiff contends the ALJ erred in failing to adopt Dr. Garcia's opinion, which would have required a finding of disability. Indeed, the ALJ did not comply with Social Security

Ruling[5] 96-6p, which provides that an ALJ "may not ignore" the opinions of State agency physicians and "must explain the weight given" to their opinions. 1996 WL 374180 at *2 (S.S.A. July 2, 1996). The decision is devoid of reference to Dr. Garcia's opinion. But under the circumstances, the error here was harmless because the ALJ in fact considered the opinions of two other State agency physicians—Drs. Nasrabadi and Maloney—and those of Drs. Sharma and Fung in making his RFC determination. All of their opinions supported a light RFC finding. And the ALJ was "not bound" by Dr. Garcia's opinions. *See id*. ("Administrative law judges . . . are not bound by findings made by State agency or other program physicians[.]") Further, Dr. Garcia's statement that disability benefits would be granted is conditional and not a recommendation, as she expressly noted that a denial of benefits is appropriate given Plaintiff's age using the alleged disability onset date of February 28, 2010.

  2. Plaintiff's Testimony

Plaintiff avers the ALJ erred in making a general credibility finding with regard to the symptom testimony, in contravention of Social Securing Ruling 96-7p,[6] 1996 WL 374186 (S.S.A. July 2, 1996), and *Lingenfelter*. The Commissioner asserts substantial evidence supported the ALJ's credibility findings.

---

[5] Unless otherwise stated, references to a ruling are to the Social Security Rulings.
[6] Ruling 96-7p states, in relevant part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
>   1. The individual's daily activities;
>   2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>   3. Factors that precipitate and aggravate the symptoms;
>   4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

13

It is settled that a claimant's statement of symptoms, including pain, without more, is not conclusive evidence of disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, "[a]n ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035-1036). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-15; *See Lingenfelter*, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quotations and citation omitted). The ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."

---

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1996 WL 374186 at *3. It was superseded by Ruling 16-3p, effective March 28, 2016. *See* 2016 WL 1020935 (March 16, 2016) *and* 2016 WL 1131509 (March 24, 2016). With Ruling 16-3p, the SSA stated it would no longer use the term *credibility* when evaluating the intensity, persistence and limiting effects of a claimant's symptoms. 2016 WL 1020935, at *14167; *see Mendenhall v. Colvin*, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) ("SSR 96-7p and SSR 16-3p are substantially similar. Rule 16-3p affects only the second step of the method by which symptoms are evaluated") (No. 3:14-CV-3389). To date, however, only the Seventh Circuit has issued a published opinion, applying Ruling 16-3p retroactively. *See Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016). But even if the Court were to apply Ruling 16-3p retroactively, the analysis remains unchanged as Ruling 16-3p implemented a change of diction rather than substance.

SSR 96-7p, 1996 WL 374186 at *2. "He must either accept [claimant's] testimony or make specific findings rejecting it." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (internal quotations and citation omitted).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. And because no evidence suggested malingering, the ALJ was required to provide clear and convincing reasons for finding Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms not fully credible. Specifically, the ALJ stated:

> At the hearing, the claimant alleged chronic fatigue and significant pain in her bilateral lower extremities that consistently caused pain and affected her ability to ambulate. However, medical examinations of the claimant's lower extremities were generally unremarkable. Moreover, there were significant gaps in the claimant's treatment records during the adjudication period. If the claimant's symptoms were as severe as she alleged, it is reasonable to expect she would have sought more consistent medical treatment and examinations would have produced more significant objective findings relating to her lower extremities.
>
> The credibility of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The medical evidence indicates the claimant received routine conservative treatment for complaints of heart disease and leg pain/cramping. The lack of more consistent treatment suggests the claimant's symptoms and limitations were not as severe as she alleged. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

AR 22. The ALJ therefore clearly identified the testimony he found not credible—chronic fatigue and pain in the lower extremities. As to his reasons, the Court finds some of them convincing.

First, the finding that Plaintiff received conservative treatment is an unconvincing reason given the numerous surgical procedures she underwent. But the ALJ made other findings.

The ALJ found that objective medical examinations of Plaintiff's lower extremities were generally unremarkable. As discussed, examinations from Dr. Fung and Mr. Bradshaw after

15

Plaintiff's surgeries were indeed generally unremarkable with regard to her lower extremities. And despite Plaintiff's repeated complaints of ongoing pain, Mr. Bradshaw could not determine the cause. But "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see* SSR 96-7p, 1996 WL 374186 at *1. But, again, the ALJ made other findings.

The ALJ also found "significant gaps" in Plaintiff's treatment, which the record substantially supports. Notably, there are no medical records which show Plaintiff seeking treatment during the seven-month period between Plaintiff's examination by Mr. Bradshaw in May 2012 and Dr. Fung's January 2013 Cardiac MSS. But this is understandable as Plaintiff's health insurance and state disability insurance ended in May 2012. What is not understandable, however, is the lack of treatment records between Plaintiff's July 2010 visit with Mr. Bradshaw and the May 2011 examination by Dr. Fung. *See Phillips v. Colvin*, 61 F. Supp. 3d 925, 943 (N.D. Cal. 2014) (concluding it was proper for the ALJ to consider the lack of treatment where, despite a period of no health insurance, claimant did not seek medical treatment when he did have health insurance). Finally, the finding that Plaintiff received inconsistent treatment is also substantially supported by the record where she did not comply with Dr. Fung's recommendation to see a neurologist.

While the ALJ explained his reasons with "less than ideal clarity," the Court finds they nonetheless allowed for a "meaningful review" of his decision. *Brown-Hunter*, 806 F.3d at 492 (9th Cir. 2015). And although the decision was not a model of clarity, there was, contrary to Plaintiff's averment, compliance with Ruling 96-7p and Ninth Circuit case law.

### 3. Vocational Findings

Plaintiff contends the ALJ erred in making his vocational findings, to which the Commissioner responds that the contentions are meritless.

Plaintiff first contends the ALJ failed to explain how Plaintiff's transferable skills "has

16

anything to do with electronics and assembly work," and the VE failed to inquire whether Plaintiff in fact exercised such skills in her retail sales job. But Plaintiff cites to authority which does not support her contentions. Ruling 82-41, on which Plaintiff relies, provides that transferability of skills is an issue when the severe impairments do not meet or equal a listing but the past work "has been determined to be skilled or semiskilled." 1982 WL 31389 at *1 (S.S.A. January 1, 1982). That is the case here. The Ruling does not, however, set forth a requirement that an ALJ explain how a claimant's transferable skills apply to a job she has not performed, or that a VE must inquire directly from a claimant the skills acquired in past work. *Id*. at *4.

Next, Plaintiff contends the ALJ failed to comply with Ruling 83-12, 1983 WL 31253 (S.S.A. January 1, 1983), which provides adjudicative guidance where the RFC "does not coincide with any of the defined exertional ranges of work." *Id*. at *1. The Ruling states that when "the exertional level falls between two rules with direct opposite conclusions, i.e., "Not disabled" at the higher exertion level and "Disabled" at the lower exertion level," and the claimant's "exertional limitations are somewhere in the middle . . . more difficult judgments are involved . . . to support a conclusion as to disability. [And VE] assistance is advisable for these types of cases." *Id*. at *2. Plaintiff points to the finding that she could stand and/or walk for four hours out of an eight-hour workday as evidence that her RFC falls between sedentary[7] and light,[8] and therefore Ruling 83-12 should have been applied. Even assuming that Plaintiff's characterization of the RFC is correct, the ALJ did comply with Ruling 83-12 in consulting with the VE to determine whether Plaintiff could make an adjustment to work other than what she previously performed.

Lastly, Plaintiff contends there were unexplained inconsistencies between the VE's

---

[7] "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[8] "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. at § 404.1567(b).

17

testimony and the DOT. That is, the VE testified Plaintiff could perform jobs under the DOT involving skills—in this case the ability to stand and/or walk for six hours in an eight-hour workday—which exceeded her capabilities as determined by the ALJ. This, according to Plaintiff, required resolution by the ALJ, and his failure to do so was error. Importantly, Plaintiff's counsel did not raise this issue at the hearing before the ALJ. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999) ("at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"). But even if she had, the conclusion would be the same.

> When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency. *Massachi v. Astrue,* 486 F.3d 1149, 1153–54 (9th Cir.2007). The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. *Id.; see also* Social Security Ruling 00–4P, 2000 WL 1898704, at *2 (Dec. 4, 2000).

*Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). But on these facts, Plaintiff cannot show a conflict which is apparent.

> [The DOT] refers to "occupations," not to specific jobs. "Occupation" is a broad term that includes "the collective description" of "numerous jobs" and lists "maximum requirements" of the jobs as "generally performed." SSR 00-4P, 2000 WL 1898704, at *2–3. Because of this definitional overlap, not all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of "maximum requirements" for an occupation will be apparent or obvious.

*See Gutierrez v. Colvin*, No. 14-35231, 2016 WL 6958646, at *2 (9th Cir. Nov. 29, 2016). Therefore, while Plaintiff could stand and/or walk for no more than four hours in an eight-hour workday, that alone does not preclude all the jobs of an assembler or electronics worker. And as the Commissioner correctly notes, "it is not beyond the imagination to envision an assembly or electronics job that requires only four hours of standing[.]" Doc. 19, pg. 21. Failing to show an

apparent conflict, the ALJ was thus not required to ask about and resolve it. *Id.* at *3.

III.     CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff, Shirley Bays.

IT IS SO ORDERED.

    Dated:   **December 14, 2016**                    **/s/ Sandra M. Snyder**
                                                                      UNITED STATES MAGISTRATE JUDGE